[ECF No. 76]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SHANNEL WOMBLE et al., <br><br> **Plaintiffs,** <br><br> v. <br><br> **CAMDEN COUNTY BOARD OF COMMISSIONERS et al.,** <br><br> **Defendants.** | Civil No. 23-3373 (KMW/SAK) |

**OPINION AND ORDER**

This matter is before the Court on the Motion for Leave to File a Third Amended Complaint by Plaintiffs Shannel Womble, Marcus Cuevas, and Darnel Graham (collectively, "Plaintiffs") [ECF No. 76]. The Court received the opposition filed by Defendants Camden County Board of Commissioners ("CCBC") and Sgt. Michael Olson (collectively, "Defendants") [ECF No. 87], and Plaintiffs' reply [ECF No. 92]. The Court exercises its discretion to decide Plaintiffs' motion without oral argument. *See* FED. R. CIV. P. 78; L. CIV. R. 78.1. For the reasons to be discussed, Plaintiffs' motion is **DENIED**.

**I.    BACKGROUND**

Plaintiffs Womble and Cuevas initially filed this employment discrimination action on June 20, 2023, asserting various claims against Defendants CCBC, New Jersey State Policeman's Benevolent Association, Inc., New Jersey State Policeman's Benevolent Association, Local 277, and Olson. *See* Compl. [ECF No. 1]. At the time, Plaintiffs named the Camden County Office of the Sheriff ("CCSO") as an independent defendant but pleaded Defendants CCBC and CCSO as

one and the same. *See id.* ¶ 5. Plaintiffs subsequently sought and obtained leave to file an amended complaint to, *inter alia*, add Graham to the action. *See* ECF Nos. 30, 31. On October 13, 2023, Plaintiffs timely filed the amendment, adding Graham and removing Defendant CCSO from the caption. *See* Am. Compl. [ECF No. 32]. Plaintiffs otherwise pleaded the CCSO as a defendant in the same fashion as their initial complaint. *See id.* ¶ 5. On June 17, 2024, the operative deadline to amend the pleadings,[1] Plaintiffs filed an unopposed motion to file another amended complaint. ECF No. 65. The Court granted the motion, and Plaintiffs' Second Amended Complaint ("SAC") was filed on July 1, 2024. *See* SAC [ECF No. 71].

      Plaintiffs' SAC is a sprawling, hundred-plus page pleading. In total, the SAC is comprised of 883 paragraphs asserting claims throughout thirty-nine (39) counts against all of the defendants. On August 15, 2024, nearly two months after the SAC was filed and the deadline to amend expired, Plaintiffs filed the instant motion seeking leave to file a third amended complaint. Specifically, they seek to add new facts under existing counts. *See* Pls.' Mem. at 1 [ECF No. 76-1]. They also seek to add new counts under various state and federal laws. *See id.* Apart from these amendments, Plaintiffs also seek to make "minor, non-substantive edits" to "eliminat[e] the suggestion that Defendant [CCSO] . . . is a separate defendant." *Id.* at 1 n.1. Attached to the motion is a copy of the proposed Third Amended Complaint ("TAC"), Ex. A [ECF No. 76-2], and a redlined version, Ex. B [ECF No. 76-3], pursuant to Local Civil Rule 15.1(a). The proposed TAC contains four (4) new counts against Defendant CCBC supported by new facts allegedly occurring since the SAC

---

[1] The initial deadline for seeking amendments to the pleadings or to add new parties expired on January 8, 2024. *See* Order, Aug. 23, 2023, ¶ 8 [ECF No. 21]. On April 25, 2024, the Court held a status conference and, at the parties' request, extended this deadline to June 17, 2024. *See* Order ¶ 3 [ECF No. 60]. No party has sought to extend or otherwise modify this deadline since.

was filed. Plaintiffs contend the proposed TAC "is necessitated by Defendant [CCBC]'s continued and recent retaliatory conduct against all Plaintiffs for filing this Action." Pls.' Mem. at 3–4.

In particular, Plaintiffs allege that Defendant CCBC's Internal Affairs ("IA") office opened an investigation against Graham for providing false statements in an earlier IA investigation of alleged misconduct by Cuevas. *See id.* at 4. Plaintiffs state that during this investigation, Graham provided false statements to protect his supervisor, Defendant Olson. *See id.* Plaintiffs seemingly acknowledge that the allegations of their SAC, and Graham's own deposition testimony, form the basis of the current investigation. *See id.* at 4 (conceding that, "contrary to his statement made to an investigator in July of 2022, in his June 2024 deposition testimony," Graham "testified that Defendant Olson made demeaning remarks about" Cuevas in his presence). Plaintiffs maintain that the current investigation is an effort to chill Graham and others from testifying truthfully in this matter. *See id.*

Plaintiffs further allege that Womble and Cuevas are being subjected to similar retaliatory conduct. *See id.* at 5. As to Womble, Plaintiffs allege that the CCSO filed an IA complaint against her for purported "insolent" conduct on the job. *See id.* at 5–6. This conduct involved Womble seeking advice from her primary supervisor after another supervisor ordered her to investigate an alleged suicide, which she felt inadequately trained to perform. *See id.* Plaintiffs maintain that Womble's actions underlying the IA complaint would not be considered insolent if she were a white male. *See id.* at 6. As to Cuevas, he left employment with the CCSO earlier this year and filed an application for accidental disability retirement benefits. *See id.* Plaintiffs allege that his application was "recently placed in abeyance," and his benefits withheld, by Defendant CCBC in retaliation for filing this matter. *Id.* Plaintiffs further allege that this course of action is only taken when an IA investigation exists, or litigation against the county remains unresolved. *See id.*

3

Defendants oppose Plaintiffs' motion. To start, Defendants assert that the IA investigation of Graham is being led by the Prosecutor's Office, not the CCSO. *See* Defs.' Opp'n at 1. Likewise, Defendants assert that neither the CCBC nor CCSO has legal authority to make disability pension decisions or withhold pension payments. *See id.* They further assert that the New Jersey Division of Pensions & Benefits and/or the New Jersey Police & Firemen's Retirement System Board of Trustees is reviewing Cuevas' disability application. *See id.* Defendants allege that Plaintiffs and their counsel are well aware of this. As such, Defendants contend the proposed amended claims of Graham and Cuevas should be denied on the bases of bad faith and futility. *See id.* at 6–11.

In their reply, Plaintiffs note that Defendants' opposition is silent as to Womble's proposed amended claim. *See* Pls.' Reply at 2. They also note that it is silent as to the minor, non-substantive edits that seek to clarify the CCSO is not a separate defendant. *See id.* at 2 n.1. For these reasons, Plaintiffs aver that Defendants do not oppose these amendments. Plaintiffs otherwise contend that Defendants' arguments of bad faith and futility are without basis in law and fact. *See id.* at 3–9. As such, Plaintiffs argue that their motion should be granted.

## II.  DISCUSSION

### A.  Legal Standard

The threshold issue in resolving a motion to amend is determining whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure.[2] Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's

---

[2] Plaintiffs implicitly address this issue without specifically referencing Rule 16, purportedly in response to Defendants' representations at the parties' meet and confer. *See* Pls.' Mem. at 1–2. The Court also notes that Defendants' opposition brief is silent on the issue. Nevertheless, because the deadline for seeking such an amendment expired prior to the filing of their motion, Plaintiffs must first meet Rule 16's good cause standard before the Court can consider whether they also satisfy Rule 15's more lenient standard. *See Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).

leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Rule 16 on the other hand provides that a scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "[W]hen a party moves to amend or add a party after the deadline in a district court's scheduling order has passed, the 'good cause' standard of Rule 16(b)(4) of the Federal Rules of Civil Procedure applies. A party must meet this standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard." *Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020).

Unlike the liberal standard of Rule 15(a)(2), "and its focus on the question of prejudice to the non-moving party, Rule 16(b)(4) focuses on the moving party's burden to show due diligence." *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010); *accord Premier Comp Sols., LLC*, 970 F.3d at 319. In assessing diligence, the Court asks whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. *See Arzadi v. Evanston Ins. Co.*, No. 17-5470, 2021 WL 1712527, at *2 (D.N.J. Apr. 29, 2021) (citation omitted). "Good cause" to amend a scheduling order may be found where "the movant learns of the facts supporting [the motion] after expiration of the relevant filing deadline." *In re: Paulsboro Derailment Cases*, No. 13-0784, 2015 WL 6163962, at *1 (D.N.J. Oct. 20, 2015) (alteration in original) (citation omitted). "Nevertheless, courts regularly find that the standard is not satisfied when a party was aware of the facts that would lead it to amend and failed to act on it." *Roggio v. F.B.I.*, No. 08-4991, 2011 WL 3625042, at *5 (D.N.J. Aug. 17, 2011) (collecting cases).

    **B. Analysis**

At the outset, the Court finds the proposed non-substantive amendments must be denied because Plaintiffs fail to satisfy Rule 16(b)(4)'s good cause standard. As previously noted, their

5

motion barely addresses this issue. Instead of explaining why these "minor, non-substantive edits" were not incorporated in the three prior iterations of their pleading, Plaintiffs baselessly allege that the deadline to amend was somehow augmented by a subsequent order extending other deadlines and a letter request by Defendants to extend those deadlines. *See* Pls.' Mem. at 2 (citing ECF Nos. 70, 72). Although Plaintiffs argue that these "minor" edits are intended to "increase clarity" as to which county entity is or is not a defendant, it appears no such confusion exists. Nevertheless, Plaintiffs' fatal pitfall here is failing to address to any degree why these amendments should be permitted under Rule 16(b)(4). *See Premier Comp Sols., LLC*, 970 F.3d at 319 (holding, in part, that the district court was entitled to find the plaintiff forfeited its argument under Rule 16(b)(4) by solely relying on Rule 15(a) in support of its motion). Contrary to Plaintiffs' assertions, the deadline to amend expired on June 17, 2024. *See* Order, Apr. 25, 2024, ¶ 3 [ECF No. 60]. The subsequent order to which they refer did not extend this deadline—notably, because no party sought to extend it. *See* Order, June 27, 2024 [ECF No. 70]. The instant motion was filed on August 15, 2024, almost two months thereafter. Because Plaintiffs fail to account for their unexplained delay in seeking these proposed amendments, they consequently fail to show the diligence necessary to establish good cause under Rule 16(b)(4). The Court also notes the record appears to demonstrate Plaintiffs possessed the knowledge necessary to incorporate the proposed amendments prior to the expiration of the deadline yet seemingly failed to act on it.[3] *See, e.g.*, *Arzadi*, 2021 WL 1712527, at *2 (affirming the denial of a "housekeeping amendment" that was

---

[3] As previously discussed, Plaintiffs initially named the CCSO in the caption and body of their complaint as a defendant distinct from Defendant CCBC. *See* Compl. ¶ 5. However, in Plaintiffs' amended complaint and SAC, the CCSO was dropped as defendant from the caption and described therein as a department "under the control" of Defendant CCBC. *See* Am. Compl ¶ 7; SAC ¶ 7. Because their amended complaint was filed on October 13, 2023, it appears Plaintiffs possessed the knowledge necessary to incorporate these proposed amendments as early as that date.

intended "to bring greater clarity to the original Complaint" because the proposed amendments "were apparent when the Complaint was filed").

In a similar regard, the Court finds that the proposed amendments as to Plaintiffs Womble and Cuevas must be denied. Plaintiffs vaguely assert in their brief that the allegations underlying the Womble amendments occurred "in July of 2024." Pls.' Mem. at 5. While they also assert that this time period is alleged in the proposed TAC, it is not. *See* TAC ¶¶ 250–51, 552–53, 560–66. Instead, Plaintiffs' proposed Womble amendments often invoke the word "recently" without any fixed reference. *See id.* ¶¶ 250, 552, 563. As a result, the Court is simply left to guess when the alleged facts giving rise to the proposed amendments occurred. The proposed Cuevas amendments suffer from similar deficiencies. Plaintiffs specifically state in their brief and the proposed TAC that "Cuevas left employment with [the] CCSO on January 2, 2024." *Id.* ¶ 340; Pls.' Mem. at 6. The Court notes that this predates the expiration of the deadline to amend by more than six months. However, the remaining timeline of the proposed Cuevas amendments is far from clear. Plaintiffs merely assert that he "subsequently filed for Accidental Disability Retirement." TAC ¶ 340. They next claim that his "application has recently been placed in abeyance." *Id.* Once again, Plaintiffs offer little clarity as to when the purported facts giving rise to the proposed amendments occurred. More critically, Plaintiffs provide no explanation as to why the Womble and Cuevas amendments should be permitted under Rule 16(b)(4). As such, Plaintiffs fail to satisfy their burden of showing diligence to establish good cause. Therefore, these proposed amendments must be denied.

The only proposed amendments that remain for the Court's consideration are those relating to Plaintiff Graham. These purportedly arise out of Graham's June 2024 deposition testimony and actions occurring thereafter. However, the Court notes that Plaintiffs' brief and proposed TAC are silent as to the specific date of his deposition. The Court was first provided with this information

7

by way of Defendants' opposition brief. *See* Defs.' Opp'n at 1, 3. Graham's deposition occurred on June 13, 2024, four days prior to the expiration of the deadline to amend.[4] *See id.* Plaintiffs are similarly silent as to the timing of the alleged subsequent acts of retaliation. For example, Plaintiffs allege that, "[f]ollowing his June 2024 deposition testimony . . . , Defendant [CCBC] opened an investigation against Plaintiff Graham asserting that [he] may be subject to discipline, up to and including termination, because he allegedly provided false statements in an earlier internal investigation of alleged misconduct by Plaintiff Cuevas." TAC ¶ 452. Plaintiffs do provide, however, the date on which Graham allegedly provided false statements, which is July 12, 2022. *See id.* ¶¶ 453, 832. In reply, Plaintiffs cite to a purported "exhibit" to their motion, which allegedly contains the IA notice Graham received regarding the current investigation. *See* Pls.' Reply at 4 (citing Ex. 2 to Pls.' Mem.). This exhibit, however, does not exist. The Court assumes Plaintiffs intended to cite to Exhibit 2 to a related motion, since that exhibit matches the description and quotation found in their reply brief. *See* ECF No. 78-3. That said, the subject document is neither dated nor signed. Thus, the Court is once again left to guess when the alleged acts occurred. In other words, the Court cannot affirmatively rule out the prospect that the proposed amendments could have been sought prior to the deadline to amend or sought promptly after receiving notice of the current investigation. Therefore, because Plaintiffs fail—let alone attempt—to satisfy their burden of establishing good cause under Rule 16(b)(4), the proposed Graham amendments must also be denied.

In light of the proximity of the deadline to Graham's deposition date, and the alleged, undated acts giving rise to his proposed amendments, it is not clear when Plaintiffs possessed the knowledge to seek the amendments. Nevertheless, it is Plaintiffs' burden to show—not the Court's

---

[4] Plaintiffs confirmed this much in their reply brief. *See* Pls.' Reply at 2.

to extrapolate or otherwise discern—good cause to amend a scheduling order under Rule 16(b)(4). As the Third Circuit has recognized, "scheduling orders are at the heart of case management. If they can be disregarded without a specific showing of good cause, their utility will be severely impaired." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986); *accord First Bank of Puerto Rico v. Misite*, 813 F. App'x 758, 764 (3d Cir. 2020) (citation omitted) (alterations in original) ("Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier. Rule 16 was drafted to prevent this situation[,] and its standards may not be short-circuited by an appeal to those of Rule 15."). Thus, if the Court were to permit the proposed amendments to proceed without the required showing of good cause, "it would render the scheduling order meaningless." *Roggio*, 2011 WL 3625042, at *6 (citations omitted). Having already found that Plaintiffs failed to make this requisite showing under Rule 16(b)(4), no further analysis is necessary under Rule 15(a)(2). *See Premier Comp Sols., LLC*, 970 F.3d at 319. The Court, therefore, will deny Plaintiffs' motion in its entirety.

### III. CONCLUSION

Accordingly, for all the foregoing reasons,

**IT IS HEREBY ORDERED** this **18th** day of **December**, **2024**, that Plaintiffs' Motion for Leave to File a Third Amended Complaint [ECF No. 76] is **DENIED**.

s/ Sharon A. King<br>
SHARON A. KING<br>
United States Magistrate Judge

cc:  Hon. Karen M. Williams, U.S.D.J.